UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

W.T. CORTEZ LAKES,            )
                                     )
          Petitioner,        )
                                     )
          v.                   )          Case No. 4:12CV00621 AGF
                                     )
UNITED STATES OF AMERICA,     )
                                     )
          Respondent.     )

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of federal prisoner Cortez Lakes to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 ("Motion to Vacate"). Petitioner pled guilty in this Court to a one-count indictment as a felon in possession of a firearm in violation of Title 18 U.S.C. § 922(g). He was sentenced to 102 month term of incarceration and a three-year term of Supervised Release.

Petitioner asserts four grounds for relief under 28 U.S.C. § 2255.

In Ground One, he asserts that plea counsel was ineffective because he should have known that the application of a four level enhancement under §2K2.1(b)(6) and a six level enhancement under §3A1.2(c)(1) of the United States Sentencing Guidelines ("USSG") was improper, and failed to make Petitioner aware of the enhancement during plea negotiations, rendering his plea unknowing and involuntary.

In Ground Two, Petitioner asserts that plea counsel was ineffective because he knew or should have known that the Court, at the time of his plea, failed to clearly state,

as required under Federal Rule of Criminal Procedure 11, the maximum time period to which Petitioner could be sentenced based on his prior convictions. Petitioner contends that as a result of plea counsel's failure to correct the alleged error in the Rule 11 plea colloquy, and Petitioner's lack of knowledge as to the maximum sentence, Petitioner's plea was neither knowing nor voluntary.

In Ground Three, Petitioner asserts that plea counsel was ineffective because plea counsel assured him that he would serve no more than a five-year sentence and never informed him of the possibility that his criminal offense level could be higher due to the application of the two USSG enhancement provisions. Petitioner also asserts that during the plea negotiations, plea counsel failed to communicate an offer from the Government to recommend a five-year sentence in exchange for his guilty plea.

Finally, in Ground Four, Petitioner asserts that plea counsel was ineffective because he knew or should have known that §§ 2K2.1(b)(6) and 3A1.2(c)(1) of the USSG were not applicable to Petitioner's sentence, yet failed to prevent the application of these provisions and the enhancement to Petitioner's criminal offense level. He further asserts that he pled guilty based on counsel's inaccurate and improper advice, rendering his plea unknowing and involuntary.

In his supplemental filings, Petitioner further asserts that from the outset, he intended to plead guilty; that counsel advised him the maximum sentence would be five-10 years; and that counsel failed to advise him that the government would seek enhancements raising the maximum sentence to 168 months. Petitioner further asserts

that the prosecutor, in a later debriefing, asked Petitioner why he did not accept the "original" plea offer of 60 months.

For the reasons set forth below, Petitioner's Motion to Vacate will be denied.

## BACKGROUND

### I. Facts

The Court adopts the following stipulation of facts set forth in the plea agreement between the parties.

> On March 12, 2010, in the City of St. Louis, within the Eastern District of Missouri, [Petitioner], having been convicted previously of a felony crime punishable by a term of imprisonment exceeding one year under the laws of the State of Missouri, did knowingly possess a firearm; to wit: one Smith & Wesson, model MP45, .45 auto caliber semi-automatic pistol, bearing serial number MPR9509, which traveled in interstate or foreign commerce during or prior to being in [Petitioner's] possession.

> On March 12, 2010, St. Louis Metropolitan Police Department ("SLMPD") detectives were on patrol in the 5500 block of Thrush, in the City of St. Louis, within the Eastern District of Missouri. The detectives saw [Petitioner] and another subject walking down the street, and observed [Petitioner] adjust a concealed item in his waistband. The officers identified themselves as police and asked to speak to [Petitioner]. [Petitioner] fled on foot. As [Petitioner] fled, he retrieved a semi-automatic pistol from his waistband. [Petitioner] continued running, ejected the magazine from the pistol, and separately discarded the pistol and magazine to the ground.

> The detectives apprehended [Petitioner] and recovered the pistol and magazine from the ground. The pistol was loaded with one live round in the chamber, and the magazine was loaded with ten live rounds.

> The detectives advised [Petitioner] of his *Miranda* rights, and [Petitioner] voluntarily, knowingly, and intelligently executed a waiver of rights form. [Petitioner] first denied possessing the pistol. [Petitioner] then admitted that his fingerprints would be on the pistol and that he possessed the pistol, even though the police officers did not find the pistol on him.

The pistol was submitted to the St. Louis Metropolitan Police Laboratory for analysis. The lab confirmed that the Smith & Wesson .45 caliber semi-automatic pistol was manufactured in Springfield, Massachusetts, and therefore was transported across state lines and in interstate commerce. The pistol is a model MP45, bearing serial number MPR9509. The lab test-fired the pistol and it functioned as designed.

A review of certified court records revealed that [Petitioner] previously was convicted of three counts of assault first degree and one count of endangering the welfare of a corrections officer. Each of these previous convictions is a felony crime punishable by a term of imprisonment exceeding one year.

[Petitioner] and the Government agree that the facts set forth above are true and may be considered "relevant conduct" pursuant to Sentencing Guidelines § 1B1.3.

See Case No. 4:10CR00412AGF-1, Doc. No. 39 ("Plea Agreement") at 9.

## II. <u>Procedural History</u>

On July 28, 2010, the United States Grand Jury charged Petitioner in a one-count indictment as a felon in possession of a firearm in violation of Title 18 U.S.C. § 922(g). Petitioner entered a plea of not guilty and following a series of pretrial motions not pertinent here, trial was set for January 3, 2011. On December 14, 2010, instead of proceeding to trial, Petitioner elected to enter a guilty plea to the single-count indictment.

The Plea Agreement reflects that the parties agreed that Petitioner's Base Offense Level under the USSG was either 14, 20 or 24. See Plea Agreement, at 6. The Plea Agreement specifically reflects that parties did not agree on the question of whether four levels should be added pursuant to Sentencing Guideline § 2K2.1(b)(6), for using or possessing any firearm or ammunition in connection with another felony offense. The

Government recommended that the four level enhancement should apply; Petitioner recommended that it should not. *Id.* Similarly, the Plea Agreement expressly recognizes that the parties disagreed whether six levels should be added pursuant to § 3A1.2(c)(1) for assaulting a law-enforcement officer, and noted that Petitioner recommended that it not apply. *Id.* The Plea Agreement further allowed for a three level reduction in the offense level for acceptance of responsibility and stated the parties' agreement that Petitioner's Total Offense Level would be no lower than 12 and no higher than 31. *Id.* at p. 7.

During the December 14, 2010 plea proceeding Petitioner appeared with counsel and pleaded guilty as charged. Petitioner took an oath to tell the truth and was asked questions, the purpose of which was to establish that the plea was both knowing and voluntary. *See* Case No. 4:10CR00412AGF-1, Doc. No. 88 ("Plea Hearing Tr.") at 4. Specifically, the Court questioned Petitioner regarding such matters as his age, the extent of his education, whether he was under the influence of alcohol or any drug, and whether he suffered from any mental disease or defect. *Id.* at 4-6. Petitioner gave appropriate responses to all the questions asked. *Id.*

The Court also advised Petitioner of the charges to which he was pleading guilty. *Id.* at 7. Petitioner stated under oath that his attorney had explained the charges to him, and that he understood the charges. He also confirmed that he was satisfied with the representation that his counsel had provided. *Id.* at 7-8. The Court then reviewed with

Petitioner the provisions of the Plea Agreement, including the possible enhancement of

the offense level.

> THE COURT: All right. And the parties set out in this agreement that there is no agreement as to whether four levels should be added under 2K2.1(b)(6) for using or possessing a firearm in connection with another felony offense. You understand the government at your sentencing is going to argue to me that those points should apply, and your attorney is going to be free to argue at that sentencing hearing that they should not apply. Do you understand that?
> DEFENDANT: Yes.
> THE COURT: All right. And the parties are also disagreeing whether points under 3A1.2(c)(1), whether six levels should be added for assaulting a law enforcement officer. And, again, the government at sentencing is reserving the right to argue that those six levels should be added, and you are reserving the ability to argue that those six levels should not be added. Do you understand that?
> DEFENDANT: Yes.
> THE COURT: All right, Now, if we were to go through those points under the Guidelines at the bottom of page 7, the parties are estimating that the total offense level for you would be not less than 12 and not higher than 31, depending upon your criminal history, whether those two additions that I talked to you about for using or possessing a firearm in connection with another felony offense or assaulting a law enforcement officer will apply. You understand that?
> DEFENDANT: Yes.
> THE COURT: So you understand, sir that a whole lot of where you may end up in the Sentencing Guidelines is going to depend not only on whether I find those offense characteristics should apply, but also what your criminal history category is. Do you understand that?
> DEFENDANT: Yes.

Plea Hearing Tr. at 18-20.

The Court also advised Petitioner of the maximum sentence that he could receive

for the charged offense.

> THE COURT: All right. And continuing on this same page, on page 11, it sets out the maximum terms of imprisonment, the maximum penalties for this offense. And those are a term of imprisonment of not more than ten

years, a fine of not more than $250,000, or both. And in addition, I could impose a period of supervised release of not more than three years. Do you understand that, sir?

        DEFENDANT: Yes.

        THE COURT: And you understand, sir, that also based upon your criminal history, it is possible that under 18 U.S.C. Section 924(e) and the Sentencing Guidelines that I discussed with you previously, that you could be subject to an enhanced penalty. Do you understand that?

        DEFENDANT: Yes.

        THE COURT: And that could carry a mandatory minimum sentence of 15 years, a maximum sentence of life, an enhanced criminal history category, and an enhanced offense level. Do you understand that?

        DEFENDANT: Yes.

        THE COURT: Now, you are retaining the right to litigate those questions at the time of your sentencing, but you understand that you could potentially be exposed to those enhanced maximum penalties. Do you understand that, sir?

        DEFENDANT: Yes.

        THE COURT: All right. And do you understand, sir, by pleading guilty you are subjecting yourself to the maximum penalties that I have just described to you.

        DEFENDANT: Yes.

Plea Tr., pp. 23-25.[1]

Thereafter, the Court asked Petitioner whether there had been any threats or promises made in exchange for Petitioner's guilty plea, and he responded that there had not. *Id*. at 25-26. The Court then accepted Petitioner's guilty plea, set the matter for sentencing, and ordered a Presentence Investigation Report ("PSR"). *Id*. at 30.

---

[1]    The Plea Agreement also specifically states that Petitioner could be subject to a mandatory minimum sentence of 15 years, and an enhanced offense level and criminal history category under 18 U.S.C. § 924(c) and Sentencing Guideline § 4B1.4. Plea Agreement, at 11.

The PSR issued by the United States Probation Office after Petitioner's plea identified Petitioner's Base Offense Level as 20, in light of the fact that Petitioner had committed the instant offense after sustaining one felony conviction for a crime of violence, Assault in the 1st Degree. *See* Case No. 4:10CR00412AGF-1, Doc. No. 40 ("PSR") at ¶ 15. The Probation Office also recommended the addition of four offense levels for possessing the firearm in connection with another felony, and the addition of six levels for assaulting a law enforcement officer during the course of the offense or immediate flight therefrom. *Id.* at ¶¶ 16, 17. The Probation Office did not allow for a reduction predicated on acceptance of responsibility, and assigned Petitioner a Total Offense Level of 30. *Id.* at ¶ 23. Finally, the PSR assigned Petitioner a Criminal History Category of IV, resulting in an advisory sentencing guideline range of 145 to 168 months. *Id.* at ¶ 40. However, because the statutory maximum sentence was ten years, Petitioner's guideline range was set at 120 months. *Id.* at ¶ 63.

Plea counsel filed written objections to the PSR on Petitioner's behalf challenging the four level enhancement for possessing a firearm in connection with another felony offense and the six level enhancement for assault of a law enforcement officer. *See* Case No. 4:10CR00412AGF-1, Doc. No. 41.

Thereafter, the Government filed a Motion to Withdraw Acceptance of Responsibility after the Government learned that Petitioner, who was detained pending the resolution of his case, assaulted and stabbed another inmate at the St. Louis City Justice Center on May 31, 2011. *See* Case No. 4:10CR00412AGF-1, Doc. No. 56. The

Government declined to move for the third point for acceptance of responsibility and indicated it would oppose the remaining two levels of acceptance of responsibility as well. *Id.* In response, Petitioner asserted that he had not assaulted or stabbed an inmate at the Justice Center and opposed the Government's change of position with respect to the reduction for acceptance of responsibility. *See* Case No. 4:10CR00412AGF-1, Doc. No. 67.

Petitioner appeared for sentencing on July 29, 2011. At that time, the Court heard evidence with respect to Petitioner's objections regarding enhancement of the offense level. The Government presented the testimony of Officers Blake Whitzman and James Kenney of the Saint Louis Metropolitan Police Department and plea counsel cross-examined these witnesses. Following this testimony, the Court overruled Petitioner's objections to the proposed enhancements and found that the four level enhancement for use of a firearm in connection with another felony offense was warranted. *See* Case No. 4:10CR00412AGF-1, Doc. No. 90, July 29, 2011 Sentencing Hearing Transcript ("Sent. Tr. I") at 55. The Court also found that the evidence supported application of the six level enhancement for assaulting a police officer. *Id.* at 56-57. Finally, the Court determined that the application of both enhancements was not unduly cumulative. *Id.* at 58.

At the request of plea counsel, the Court continued the hearing on the remainder of the sentencing issues until September 9, 2011. At that time, the Court heard evidence with respect to application of the three-point reduction for acceptance of responsibility in

light of the allegation that Petitioner assaulted another inmate while incarcerated at the St. Louis Justice Center. The Government presented two witnesses, Felicia Norman, a corrections officer; and Lieutenant Alicia Maston-Gooch, both of whom were employed at the St. Louis City Justice Center. *See* Case No. 4:10CR00412AGF-1, Doc. No. 89, September 9, 2011 Sentencing Hearing Transcript ("Sent. Tr. II") at 5-19 & 30-36. Plea counsel cross-examined these witnesses with respect to issues bearing on the alleged assault and argued that Petitioner should receive a three level reduction in the offense level for acceptance of responsibility. *Id.* at 19-24 & 36-39. Following the presentation of testimony and argument, the Court found that Petitioner had committed the assault and was not entitled to a reduction in his offense level for acceptance of responsibility, and further held that the ten level enhancement of the offense level applied. *Id.* at 46-47.

After hearing all of the evidence relevant to the offense level and criminal history category and ruling on all of the objections, the Court assigned Petitioner a Total Offense Level of 30 and a Criminal History Category of IV, resulting in an advisory sentencing guideline range of 135 to 168 months. *Id.* at 48. However, due to the 120 month statutory maximum sentence for the charge of being a felon in possession of a firearm, Petitioner's final Guideline range was 120 months. *Id.*

The Court then turned to testimony regarding Petitioner's motion for a downward variance and application of the sentencing factors under 18 U.S.C. § 3553. Dr. Rosalyn Schultz, Ph.D., testified on behalf of Petitioner that he exhibited major depressive disorder, mildly retarded intellectual functioning, ADHD, Post-Traumatic Stress

Disorder, asthma, and marked situational stresses. *Id.* at 50-114. Following this testimony, the Court granted Petitioner's motion for downward variance and imposed a sentence of 102 months' incarceration and a three year term of Supervised Release. *Id.* at 117.

Although the Plea Agreement expressly preserved his right to appeal the sentence to the Eighth Circuit Court of Appeals, Petitioner did not file a direct appeal.

## III.  Motion for Post-Conviction Relief and Hearing

On April 5, 2012, Petitioner filed a timely motion for post-conviction relief under 28 U.S.C. § 2255. He thereafter amended his motion and the Government responded to the amended motion. Petitioner did not file a traverse, and the time to do so has expired. On October 29, 2012, the Court appointed counsel to represent Petitioner in this matter and scheduled a hearing with respect to Petitioner's assertion that plea counsel failed to transmit to Petitioner an offer from the Government to recommend a five-year sentence in exchange for the guilty plea. On January 4, 2013, the Court held a hearing at which the parties presented testimony and argument with respect to this issue.

In summarizing the testimony presented at the hearing, the Court first notes that it generally credits the testimony of Assistant United States Attorney, Cris Stevens, and plea counsel, Assistant Federal Public Defender Sean Vicente. Where the testimony of these individuals conflicts with that of Petitioner, the Court finds that their testimony was credible and Petitioner=s testimony was not.

A. Stevens' Testimony

Mr. Stevens testified that the terms set forth in the Plea Agreement constituted the only offer made by the Government and communicated to Mr. Vicente in this case. He further testified that the parties' intention with respect to the Plea Agreement was to express their agreement with respect to the base offense level but not to refer to a recommended sentence of specific length and to reserve the question of enhancements for resolution by the Court at sentencing. In addition, Mr. Stevens testified that he had no conversations with Petitioner before, during, or after the plea proceedings in the courtroom, at the City Justice Center, or at any other location. Mr. Stevens further testified that there was no proffer session with Petitioner either before or after his plea.

B. Vicente's Testimony

Mr. Vicente testified that the Government made only a single plea offer in this case. He further testified that he met with the Petitioner before and after the plea and that after the plea Petitioner was housed at the Phelps County Jail due to allegations that he had been involved in a stabbing incident at the City Justice Center. Mr. Vicente next testified that when he met with Petitioner after the plea but prior to sentencing, he told Petitioner that he would ask for and that Petitioner might receive a 60 month sentence. He further testified, however, that he told Petitioner that he should expect a sentence of 120 months due to his criminal history and the enhancements that might apply due to Petitioner=s brandishing of a weapon during the offense conduct.

In addition, Mr. Vicente testified that he recognized that Petitioner was "mentally slow" and had therefore tailored his explanation of the possible sentence to make it

- 12 -

simple and understandable to Petitioner. Specifically, he noted that he did not communicate with Petitioner by way of letter or other written documents. Finally, Mr. Vicente testified that he was painstaking when discussing these matters with Petitioner and emphasized the likelihood that Petitioner would receive a sentence at the higher end of the possible range.

C. Petitioner's Testimony

Petitioner testified that he met with Mr. Vicente at the Phelps County Jail after he entered his plea and that Mr. Vicente told him that he was going to receive a sentence of five years. He further testified that the Assistant United States Attorney, Mr. Stevens, visited him at the City Justice Center at some time between his plea and his sentencing, and asked him to "rat someone out," but that he refused to do so. Petitioner also testified that during that visit Mr. Stevens had asked him "why he didn't take the sixty months." Petitioner testified that Mr. Vicente was not present at this meeting. Finally, Petitioner stated that he was sentenced to 102 months but did not realize that 102 months was not five years until he met with a counselor in the Allenwood, Pennsylvania facility where he is housed.

**APPLICABLE LAW**

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack.

28 U.S.C. § 2255. "[A] collateral challenge [under § 2255] may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). Instead, to warrant relief under § 2255, the movant must identify an error that amounts to a fundamental miscarriage of justice. *Davis v. United States*, 417 U.S. 333, 346 (1974); *Hill v. United States*, 368 U.S. 424, 428 (1962).

To succeed on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the petitioner's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001); *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Sera*, 267 F.3d at 874. A petitioner "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo*, 223 F.3d at 925. When reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. In addition to proving a deficiency in counsel's performance, the petitioner also must prove that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id*. at 692.

The burden is on the petitioner to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694; *DeRoo*,

223 F.3d at 925.

Any claim for ineffective assistance of counsel faces two significant impediments.

First, a petitioner must overcome the "'strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance.'"  *United States v. Rice*, 449

F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689); *Sera*, 267 F.3d at

874; *see also Ford v. Lockhart*, 904 F.2d 458, 462 (8th Cir. 1990) (holding that the

evaluation of a claim of ineffective assistance of counsel is highly deferential and subject

to a strong presumption that counsel acted competently).  In addition, a petitioner

confronts the legal principle that "'strategic choices made after thorough investigation of

law and facts . . . are virtually unchallengeable.'"  *Rice*, 449 F.3d at 897 (quoting

*Strickland*, 466 U.S. at 690).

The Sixth Amendment right to counsel extends to the plea-bargaining process and

therefore, a defendant is "entitled to the effective assistance of competent counsel" during

plea negotiations.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012); *see also Missouri v.

Frye*, 132 S. Ct. 1399, 1405 (2012), *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill

v. Lockhart*, 474 U.S. 52, 58 (1985).  In addition, the *Strickland* standard applies to guilty

plea challenges premised upon allegations of ineffective assistance of counsel.  *Lockhart*,

474 U.S. at 58.  To satisfy the "prejudice" requirement under *Strickland*, a petitioner must

show "there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." *Id.* at 59. In other words, a petitioner "must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384.

Finally, "'[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,'" a court need not determine whether a petitioner meets the "performance" prong of the *Strickland* test. *Young v. Bowersox*, 161 F.3d 1159, 1160 (8th Cir. 1998) (quoting *Strickland*, 466 U.S. at 697); s*ee also Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) (explaining that a reviewing court need not address both components of the Strickland test if a petitioner makes an insufficient showing on one component).

## DISCUSSION

### I. Ground One: Failure to Make Petitioner Aware of Enhancements

With respect to Petitioner's first ground for relief, the Court concludes that the record refutes Petitioner's assertion that plea counsel was ineffective because he should have known that the ten level enhancement was erroneous, or that his failure to advise Petitioner of the enhancement caused the plea to be involuntary.

First, inasmuch as the Plea Agreement recites the Petitioner's objection to the enhancements and reserves the resolution of this dispute for the Court at sentencing, it is apparent that plea counsel was aware of and challenged application of the ten level enhancement during the negotiation of the Plea Agreement. *See* Plea Agreement at 6. In addition, plea counsel filed objections to the portion of the PSR that recommended

applying each of the enhancements to Petitioner's base offense level. *See* Case No.
4:10CR00412AGF-1, Doc. No. 41 at 1. The record also indicates that at the sentencing
hearing, plea counsel cross-examined the Government's witnesses with respect to the
factual underpinnings of the enhancement criteria and urged the Court to find that the
enhancements should not be applied. Sent. Tr. I at 36-40 & 45-47.

In addition, the Court finds no basis for Petitioner's assertion that he was unaware
of these possible enhancements at the time of his plea. The Plea Agreement explicitly
states that, depending upon the Court's resolution of the issue, a ten level enhancement
might apply to the calculation of Petitioner's offense level. The Court must presume that
Petitioner was aware of this information because the record indicates that Petitioner
stated under oath that he had read the Plea Agreement before signing it, that he had talked
with his attorney about its contents and meaning, and that he "clearly" understood
everything in it. *See* Plea Tr. at 11. Petitioner's own testimony on the record plainly
refutes his assertion that counsel failed to advise him of the possible application of the
enhancements. Furthermore, the Court finds that plea counsel's efforts here clearly fall
within "'the wide range of professionally competent assistance.'" *Wrolstad v. United
States*, No. 1:10-CV-202 CAS, 2014 WL 897386, at *6 (E.D. Mo. Mar. 6, 2014) (quoting
*McReynolds v. Kemna*, 208 F.3d 721, 723 (8th Cir. 2000)). Therefore, the Court cannot
say that plea counsel's representation of Petitioner was constitutionally lacking in this
respect.

Moreover, even if the Court were to assume that plea counsel failed to inform Petitioner of the possible increase in the offense level, the transcript of the plea proceeding belies Petitioner's assertion that he was unaware of that possibility. During that proceeding, the Court thoroughly reviewed with Petitioner the terms of the Plea Agreement emphasizing the possibility of the ten level enhancement and the fact that no one could predict what sentence the Court might impose. Plea Tr. at 18-20. Even if plea counsel had not discussed these issues with Petitioner, the record establishes that the Court certainly did and that Petitioner stated under oath that he understood the issues and had no additional questions.

Finally, the Court concludes that Petitioner cannot make the showing of prejudice required to establish this claim of ineffective assistance. Apart from Petitioner's self-serving assertions, there is no evidence whatsoever that Petitioner would have proceeded to trial. Petitioner simply has not shown that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Wrolstad*, 2014 WL 897386, at *6 (quoting *Lockhart*, 474 U.S. at 59).[2]

## II.  Ground Two: The Rule 11 Colloquy

For his second ground, Petitioner asserts that plea counsel was ineffective because he knew or should have known that an error occurred during the Rule 11 plea colloquy and failed to correct the error. Specifically, Petitioner asserts that the Court failed to

---

[2]  Indeed, in his own affidavit, Petitioner asserts that he always intended to enter a plea of guilty, based on his understanding that he would be "facing a maximum sentencing of five to ten years." (Doc. No. 25, at 3.) Here Petitioner's maximum sentence was in fact ten years.

- 18 -

inform him as required by Federal Rule of Criminal Procedure 11 of "any maximum possible" penalties for the charged offenses to which he was pleading guilty. Petitioner further asserts that he did not know and was not told the "maximum possible" penalties due to his prior convictions, and that this error rendered his plea unknowing and involuntary. *See* Doc. No. 9 at p. 6.

"Rule 11 requires the district court to follow certain protocol to ensure a defendant's plea is knowing, intelligent, and voluntary." *United States v. Gray*, 581 F.3d 749, 752 (8th Cir. 2009). Rule 11(b)(1) provides in relevant part that

> [b]efore the court accepts a plea of guilty . . . , the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . any maximum possible penalty, including imprisonment, fine, and term of supervised release. . . .

Fed. R. Crim. P. 11(b)(1)(H); *see also United States v. Garcia*, 604 F.3d 575, 578-80 (8th Cir. 2010). Rule 11 further provides that: "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h).

Upon review of the transcript of the plea proceeding, the Court cannot conclude that a Rule 11 error occurred here. The transcript clearly establishes that Petitioner was fully and explicitly informed of the maximum sentence he might receive, namely a ten year maximum term of imprisonment, unless 18 U.S.C. § 924(e) applied. Plea Tr. at 23-25. Petitioner is perhaps confused by the fact that the Guideline range was higher, or by the possible application of § 924(e). But of course, § 924(e) did not apply, and the Guideline range was limited by the statutory maximum ten-year penalty. Because there

was no Rule 11 error, plea counsel could not have been ineffective for failing to know of or act upon such an error.

Moreover, Petitioner cannot demonstrate that he suffered prejudice. In the absence of an error by counsel, "'there is [no] reasonable probability that, but for counsel's errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial.'" *Wrolstad*, 2014 WL 897386, at *6 (quoting *Lockhart*, 474 U.S. at 59).

For these reasons, Petitioner's second ground for post-conviction relief also is denied.

### III. <u>Ground Three: Failure to Fully Advise Petitioner during Plea Negotiations</u>

Petitioner next argues that plea counsel was ineffective for improperly advising him that he would serve no more than a five-year sentence, and for failing to advise Petitioner of the possible ten level enhancement. He further contends that plea counsel failed during plea negotiations to communicate the Government's most lenient plea offer of 60 months. Petitioner asserts that if he had known of these matters, he would have taken the more lenient plea offer. *See* Doc. No. 9 at p. 8. Petitioner also argues that as a result of plea counsel's failure to advise him of these factors his guilty plea was neither voluntary nor knowing. *See id.* at 5.

These arguments also lacks merit. On the basis of the testimony adduced at the January 4, 2013 hearing, the Court finds no credible basis for Petitioner's contention that the Government communicated more than one offer to plea counsel (the offer set forth in the plea agreement) or that the Government ever offered a 60 month sentence. Although

the testimony indicates that after the parties entered into the Plea Agreement and Petitioner entered his guilty plea, plea counsel mentioned to Petitioner that there was a possibility of a five-year sentence, the Court finds that plea counsel discouraged Petitioner from expecting such a sentence and carefully explained to him why a five-year sentence was highly unlikely. Indeed, Petitioner's own affidavit makes plain that counsel advised him he could be facing a ten year maximum sentence. (Doc. No. 25, at 3.)

For each of these reasons, the Court denies Petitioner's third ground for relief.

## IV. Ground Four: Application of §§ 2K2.1(b)(6) and 3A1.2(c)(1) to the Offense

Petitioner's final ground for post-conviction relief is similar to his first ground. Petitioner asserts that plea counsel was ineffective because he knew or should have known that the enhancement provisions in § 2K2.1(b)(6) and § 3A1.2(c)(1) of the USSG were not applicable to Petitioner's criminal offense. Petitioner asserts that plea counsel failed to investigate the application of these provisions to his offense and to recognize they did not apply, and therefore provided Petitioner inaccurate advice that the enhancements applied, that caused his plea to be involuntary. *See* Doc. No. 9 at p. 9.

This final ground also lacks merit because, as discussed earlier, plea counsel clearly investigated and challenged the application of the enhancements at every possible juncture throughout the proceedings. As a result of those challenges, plea counsel negotiated both an agreement to reserve the issue and present their dispute to the Court at sentencing, and to permit Petitioner to appeal any sentencing issues. Following the entry of the guilty plea, plea counsel objected to the recommendation in the PSR with respect

to the enhancement issues, cross-examined the Government's witnesses on this issue during the sentencing hearing, and argued to the Court that the enhancements should not apply. And the transcript reflects that counsel did so ably. Despite these efforts, the Court disagreed with plea counsel's position and overruled the objection to their application. The fact that plea counsel failed to prevail on a disputed legal issue does not render his performance ineffective.

The Court also rejects Petitioner's argument that he pled guilty based on his counsel's incorrect assessment as to the application of the enhancements. Before the entry of the guilty plea, the Court and plea counsel informed Petitioner of the dispute, that final resolution of the dispute was left to the Court, and that the Court might or might not agree with plea counsel's position that the enhancements should not apply. Having been made fully aware at the time of his plea of this issue and its possible effect on his sentence, Petitioner cannot now complain that the resolution of that legal issue against him rendered his guilty plea involuntary or unknowing. For this reason, Petitioner's final ground for post-conviction relief also will be denied.

## CONCLUSION

For the reasons set forth above, the Court concludes that Petitioner is not entitled to post-conviction relief pursuant to 28 U.S.C. § 2255. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of Petitioner's claims for relief pursuant to 28 U.S.C. § 2255 debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2253(c)(1), due to Petitioner's failure to

make a substantial showing that he has been denied a constitutional right.  *See* 28 U.S.C.

§ 2253(c)(2) ; s*ee also Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Motion and Amended Motion to

Vacate, Correct or Set aside his sentence pursuant to 28 U.S.C. § 2255 are **DENIED**.

(Doc. Nos. 1 & 9.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of June, 2014.